# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DONNA KIJEK, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> GC SERVICES LIMITED PARTNERSHIP, <br><br> Defendant. | Case No.: 20-cv-408 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Donna Kijek is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Defendant GC Services Limited Partnership ("GCS") is a debt collection agency with its principal offices located at 6330 Gulfton, Houston, Texas 77081.

6. GCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. GCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. GCS is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

9. On or about April 9, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Citibank, N.A." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

10. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred by use of a credit account which was used only for personal, family, or household purposes.

11. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, <u>Exhibit A</u> was the first written communication that Defendant sent to Plaintiff regarding this alleged debt.

14. The reverse side of <u>Exhibit A</u> includes "Consumer Information" that largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

**CONSUMER INFORMATION:**
Unless you, within thirty (30) days after your receipt of this letter, dispute the validity of the debt, or any portion thereof, we will assume the debt to be valid. If you notify us in writing within the above described thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you. Additionally, upon your written request within the above described thirty (30) day period, we will provide you with the name and address of the original creditor, if it is different than the current creditor.

15. The header in Exhibit A includes the following:

> File Number: ▇▇▇081
> Client Account Number: **ENDING 9683**
> New Balance: **$1,328.07**
> Minimum Payment Due: **$1,328.07**

16. The header in Exhibit A states that the "New Balance" is $1,328.07 and that the "Minimum Payment Due" is $1,328.07."

17. The body in Exhibit A contains the following:

> We are writing to let you know that your account with Citibank, N.A., with a new balance of $1,328.07, has been referred to us.
>
> This letter shows your minimum payment amount currently due. If you are making a payment, please send us your payment using the enclosed envelope, and, if paying by check, make your check payable to "Citibank, N.A.".

18. The topmost portion of Exhibit A contains a payment remittance slip, which states on its reverse side:

> IMPORTANT: BE CERTAIN YOUR ACCOUNT IS CORRECT.
>
> HOME PHONE:
> _____
>
> NEW ADDRESS:
> _____
> _____
> _____

19. The references to the "minimum payment" and "new balance" amounts in Exhibit A are confusing and misleading to unsophisticated consumers.

20. An unsophisticated consumer would understand that a debt collector using the terms "minimum payment" and "new balance" to describe a credit card account was collecting

3

on a credit card account that is still open. *See, e.g., Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 416-17 (7th Cir. 1980) ("The rationale behind standardized terminology is that it facilitates consumer identification of the items listed, thereby encouraging comparison of the various credit terms which may be available …. We will therefore require strict adherence to the required terminology under the statute and regulations, and we will not countenance deviations from those requirements, however minor they may be in some abstract sense."); *see also, Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 370 (5th Cir. 1976).

21. Upon information and belief, the "minimum payment" and "new balance" amounts stated in <u>Exhibit A</u> were the same amount because the alleged debt referenced in <u>Exhibit A</u> was charged off and accelerated at the time <u>Exhibit A</u> was mailed.

22. An unsophisticated consumer understands that information about a specific debt may be inserted into a "form" debt collection letter by computer.

23. An unsophisticated consumer would be led to be believe that the credit card account referenced in <u>Exhibit A</u> was still open, and would wonder whether the "minimum payment" amount stated in <u>Exhibit A</u> was accurate.

24. <u>Exhibit A</u> exacerbates the confusion by instructing the consumer that it is "IMPORTANT" to "BE CERTAIN YOUR ACCOUNT IS CORRECT."

25. Even if the consumer understood that an alleged debt was in default and had "charged off," that does not mean that the consumer cannot still tender a minimum payment amount that is considerably less than the "new balance." *See, e.g., Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1161 (Ind. Ct. App. 2010).

26. Further, an unsophisticated consumer would understand the term "new balance" to mean that monthly payments as a portion of the open credit card's total balance were

4

continuing to become "due" pursuant to the credit card agreement, and that the creditor had authorized the debt collector to collect these payments as they became due and past due. *See, Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004).

27. Upon information and belief, Defendant was authorized to collect a fixed amount of debt.

28. Upon information and belief, Defendant was authorized to accept payment of any amount from Plaintiff.

29. Plaintiff read Exhibit A.

30. Plaintiff was confused and misled by Exhibit A.

31. The unsophisticated consumer would be confused and misled by Exhibit A.

32. Plaintiff had to spend time and money to investigate Exhibit A and the possible consequences of responding to Exhibit A.

### *The FDCPA*

33. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and confusing or inaccurate information about the debt itself or the debt collector is a concrete and particularized injury. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character,

5

amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest

6

that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

34. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

35. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11

(N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at \*4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at \*1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

36. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

37. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

38. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

39. 15 U.S.C. § 1692g states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    (1) the amount of the debt;

8

> . . .
>
>> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>>
>> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>>
>> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b) Disputed debts
>
> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

40. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer, and must do so in a non-confusing manner. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

41. The Seventh Circuit has also explained that a debt collector that has been authorized to collect a fixed amount of a credit card debt cannot imply that it was authorized to collect future installments of that credit card balance as they become past due. *Chuway*, 362 F.3d at 947-48.

9

42. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

## COUNT I – FDCPA

43. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

44. Exhibit A references "minimum payment" and "new balance" amounts.

45. Consumers would understand the references in Exhibit A to minimum payment and new balance amounts to mean that the alleged debt referenced in Exhibit A is an open credit card account that has not yet been closed and accelerated.

46. Upon information and belief, the alleged debt referenced in Exhibit A was charged off and accelerated before Exhibit A was mailed.

47. Upon information and belief, Defendant was authorized to collect a fixed amount of debt.

48. As used in Exhibit A, the terms "minimum payment" and "new balance" are confusing and misleading to unsophisticated consumers.

49. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1).

## CLASS ALLEGATIONS

50. Plaintiff brings this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin, (b) who were sent a debt collection letter letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a credit card debt, (d) that was charged off and accelerated when the letter in the form of Exhibit A was mailed, (e) where the debt was incurred for personal, family, or household purposes, and (f) the debt collection letter in the form of Exhibit A was mailed between March 16, 2019 and March 16, 2020, inclusive, (g) and was not returned by the postal service.

51. The Class is so numerous that joinder is impracticable.

52. Upon information and belief, there are more than 50 members of the Class.

53. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA.

54. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

55. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

56. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

57. Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 16, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com